# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>VIRGINIA SURETY COMPANY, INC.,<br><br>　　　　　　　　　　Defendant. | Case No. 11cv1839 BTM(JMA)<br><br>**ORDER RE: SUPPLEMENTAL BRIEFING ON MOTION TO SET ASIDE DEFAULT AND DEFAULT JUDGMENT** |

　　Defendant Virginia Surety Company, Inc. ("Virginia Surety") has filed a Motion to Set Aside Default and Default Judgment or to Amend Default Judgment. For the reasons discussed below, the Court orders supplemental briefing from the parties.

## I. BACKGROUND

　　This action arises out of two underlying state court actions: (1) <u>City of San Diego v. RCP Block and Brick, Inc. et al.</u>, (Superior Court, County of San Diego, Case No. 37-2008-00090291-CU-CD-CTL) ("City of San Diego Action"); and, (2) <u>Woodland Creek Homeowners Association v. Wind River Woodland Partners, LLC, et al.</u>, (Superior Court, County of San Mateo, Case No. CIV493225) ("Woodland Creek Action").

　　With respect to both of these actions, Plaintiff St. Paul Fire and Marine Insurance Company ("St. Paul") contends that it is entitled to equitable contribution from Virginia Surety

because Virginia Surety has not paid its fair share of the costs of defending and indemnifying the insured parties in those actions. St. Paul also seeks a declaration regarding the respective rights and obligations of St. Paul and Virginia Surety under the commercial general liability insurance policies in question.

St. Paul commenced this action on August 17, 2011. Default was entered against Virginia Surety on November 10, 2011. In an Order filed on August 14, 2012, the Court granted St. Paul's motion for default judgment. Judgment was entered in favor of St. Paul and against Virginia Surety in the amount of $441,905.92. The Court also granted declaratory relief which set forth Virginia Surety's duties to defend, contribute to defense fees and costs, and provide separate counsel to common insureds, Wind River and Bjork.

## II. STANDARD

Fed. R. Civ. P. 55(c) provides that a court may set aside the entry of default "for good cause shown." Factors to be considered when deciding whether to set aside an entry of default for "good cause" include: (1) whether the defendant's "culpable conduct" led to the default; (2) whether the plaintiff would be prejudiced by a set-aside; and (3) whether the defendant can present a meritorious defense to the claim. Falk v. Allen, 739 F.2d 46, 463 (9th Cir. 1984); American Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1108 (9th Cir. 2000). If any one of these factors weighs against the defendant, the district court may refuse to set aside the default. Franchise Holding II v. Huntington Rests. Group, Inc., 375 F.3d 922, 925-26 (9th Cir. 2004). However, "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." Falk, 739 F.2d at 463.

When default judgment has been entered, relief is governed by Rule 60(b). In cases where a defendant seeks relief under Rule 60(b)(1) on the ground of "excusable neglect," the court applies the same three Falk factors to determine whether relief is warranted. Brandt v. American Bankers Ins. Co. of Florida, 653 F.3d 1108, 1111 (9th Cir. 2011).

### III. **DISCUSSION**

Virginia Surety argues that the default judgment should be set aside under Rule 60(b)(1) due to mistake or excusable neglect. "[F]or purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 394 (1993). Whether neglect is "excusable" involves an equitable determination that takes into account all of the relevant circumstances surrounding the party's omission. Id. at 395.

A. Culpable Conduct

Typically, a defendant's conduct is deemed "culpable" where "there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 698 (9th Cir. 2001). "[S]imple carelessness is not sufficient to treat a negligent failure to reply as inexcusable, at least without a demonstration that other equitable factors, such as prejudice, weigh heavily in favor of denial of the motion to set aside a default." United States v. Signed Personal Check No. 730, 615 F.3d 1085, 1093 (9th Cir. 2010).

This case involves simple carelessness, not willful or bad faith failure to respond. Virginia Surety explains that the summons and complaint were served on Virginia Surety's statutory agent Corporation Service Company, on August 19, 2011. The papers were then forwarded to The Warranty Group, Virginia Surety's managing agent, who sent notice of the suit by e-mail to all of the Managing General Agents who may have been responsible for the policies at issue in the suit. (Decl. of Byron Johnson ¶ 5.) The policies at issue were written on behalf of Virginia Surety by Construction Program Group. Construction Program Group was acquired by Old Republic in 2006 and became Old Republic Construction Program Group, Inc. ("ORCPG"). (Id. at ¶ 4) Although the Construction Program Group ceased writing policies on behalf of Viriginia Surety, it remained responsible for adjusting and responding to claims and suits brought under the previously written policies. (Id. at ¶ 4.)

1  Byron Johnson, a Claims Analyst at ORCPG, received an email from The Warranty
2  Group attaching a copy of the summons and complaint in this case. (Id. at ¶ 6.) Johnson
3  apparently placed the e-mail into an electronic folder and negligently failed to take further
4  action on the matter. (Id. at ¶ 7.) Normally, if no Managing General Agent accepts
5  responsibility for the suit, The Warranty Group will follow up to determine who is handling the
6  suit. (Id.) However, according to Johnson's records, there was never any follow up, and
7  Johnson never completed his evaluation. (Id.)

8  In a letter dated November 2, 2012, and mailed to Virginia Surety's offices in Chicago,
9  Thomas V. Perea, counsel for St. Paul, informed Virginia Surety that default judgment had
10 been entered against it. (Ex. A to Camp Decl.) The Warranty Group forwarded this letter to
11 ORCPG. (Johnson Decl. ¶ 7.) Upon receipt of the letter, Johnson located the prior e-mail
12 in his electronic folder, performed his evaluation, and immediately advised The Warranty
13 Group that ORCPG would handle the matter. (Id.) On November 19, 2012, ORCPG
14 retained the law firm of Branson, Brinkop, Griffith and Strong, LLP, and requested that
15 counsel contact Mr. Perea and request that the default be set aside. (Id.)

16 John R. Campo, an attorney with the Branson firm, promptly wrote a letter to Mr.
17 Perea, asking him to stipulate to set aside the default and judgment, and left voicemail
18 messages to the same effect. (Campo Decl. ¶¶ 3-6.) On December 6, 2012, Mr. Campo
19 received an e-mail from Mr. Perea advising that he still had not heard from St. Paul and that
20 he was not yet able to say whether he could voluntarily agree to set aside the default and
21 default judgment. (Campo Decl. ¶ 7.) This motion was filed on December 11, 2012.

22 It appears that this lawsuit simply "fell through the cracks" and the appropriate people
23 (ORCPG) were unaware that they had a duty to respond to St. Paul's complaint. Ordinarily,
24 there is a procedural safeguard when no Managing General Agent claims responsibility for
25 a policy – i.e., follow-up inquiries by The Warranty Group. However, in this instance, the
26 safeguard failed. There is no evidence that Virginia Surety acted willfully or in bad faith in
27 failing to respond to the complaint.

28 After service of the summons and complaint, St. Paul did not have any

communications with Virginia Surety or its agents regarding the lawsuit until the November 2 letter from Perea. Once ORCPG received Perea's letter and learned that it was responsible for the lawsuit, ORCPG acted quickly to retain counsel and attempt to set aside the default judgment.

The Court does not find Virginia Surety's conduct to be culpable. Virginia Surety failed to respond to the complaint as result of run-of-the-mill human error, not deliberate evasion.

B. Prejudice

To be prejudicial, the setting aside of a default must result in greater harm than simply delaying resolution of the case. TCI, 244 F.3d at 701. The standard is whether the plaintiff's ability to pursue his claim will be hindered. Id.

St. Paul does not make any claim that it would be prejudiced by setting aside the default judgment.[1] The only potential prejudice the Court discerns is the attorney's fees St. Paul incurred in moving for the entry of default, bringing the motion for default judgment, and defending the instant motion. If the Court were to grant Virginia Surety's motion to set aside the default and default judgment, it would be conditioned on the payment by Virginia Surety of St. Paul's reasonable attorney's fees. See Brandt, 653 F.3d at 1110 n. 1 (district court imposed conditions on setting aside default judgment including reimbursement of attorney's fees and travel expenses). Therefore, the Court orders St. Paul to submit a supplemental brief and itemized time records so that the Court may determine reasonable attorney's fees in the event that it decides to set aside the default judgment.

---

[1] In fact, it may be better for St. Paul to litigate its claims. In the alternative to vacating the default judgment, Virginia Surety moves to modify the monetary portion of the judgment so that it awards $75,000 instead of $441,905.92. Virginia Surety argues that because the Complaint alleges that the amount in controversy "exceeds $75,000" but does not allege any other damage amount, St. Paul is limited to recovering $75,000 upon default judgment. Under California law, it seems that Virginia Surety is correct. California Code of Civil Procedure § 580 provides that "the relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint . . . ." Where a complaint prays for damages "in excess" of a certain dollar amount, the damages awarded on default judgment may not exceed the specific amount alleged in the complaint. Becker v. S.P.V. Construction Co., 27 Cal. 3d 489 (1980).

C. Meritorious Defense

A defendant seeking to set aside default must allege sufficient facts that, if true, would constitute a defense. TCI, 244 F.3d at 700. Whether the factual allegations are true is not determined by the court when it decides the motion to set aside the default. Signed Personal Check No 730, 615 F.3d at 1094.

Virginia Surety falls short of setting forth facts that would constitute a defense. Virginia Surety did not submit any declarations containing facts supporting a defense and the proposed Answer contains general denials. Virginia Surety points to allegations in the Complaint that Virginia Surety *contended* that (1) the property damage claims in the City of San Diego Action began prior to the inception of the Virginia Surety policy, and (2) it was not necessary to provide separate counsel for the developer and general contractor in the Woodland Creek Action. However, contentions are not the same thing as *factual allegations* supporting Virginia Surety's defenses.

Accordingly, the Court orders Virginia Surety to submit a supplemental brief setting forth factual allegations supporting a meritorious defense.

## IV. CONCLUSION

For the reasons discussed above, the Court orders supplemental briefing from St. Paul on the issue of reasonable attorney's fees and from Virginia Surety on the issue of a meritorious defense. The supplemental briefs shall be filed on or before **February 18, 2013**. A party may submit a reply brief to the other party's submission by **February 25, 2013**.

**IT IS SO ORDERED.**

DATED: February 4, 2013

BARRY TED MOSKOWITZ, Chief Judge
United States District Court